**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| DAVID KAUFMANN,<br><br>    Plaintiff,<br><br>vs.<br><br>MOMENTIVE GLOBAL INC., SUSAN L. DECKER, DAVID A. EBERSMAN, ERIKA H. JAMES, SHERYL K. SANDBERG, ALEXANDER J. LURIE, DANA L. EVAN, BRAD D. SMITH, RYAN FINLEY, BENJAMIN C. SPERO, and SERENA J. WILLIAMS,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Kaufmann ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Momentive Global Inc. ("Momentive" or the "Company") and the members of Momentive's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to Zendesk, Inc. ("Zendesk") through Zendesk's subsidiary Milky Way Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

- 1 -

2.       On October 28, 2021, Momentive and Zendesk announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each Momentive stockholder will receive 0.225 shares of Zendesk common stock for each share of Momentive common stock they own.

3.       On January 7 2021, Momentive filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the Company's and Zendesk's financial projections; and (ii) the financial analyses performed by the Company's financial advisors Allen & Company LLC ("Allen") and J.P. Morgan Securities LLC ("J.P. Morgan").  Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.       The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.       The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual

who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Momentive.

9. Defendant Momentive is a Delaware corporation, with its principal executive offices located at One Curiosity Way, San Mateo, California 94403. Momentive's common stock trades on the Nasdaq Global Select Market under the ticker symbol "MNTV."

10. Defendant Susan L. Decker has served as a director of the Company since November 2017.

11. Defendant David A. Ebersman is Chair of the Board and has served as a director of the Company since June 2015.

12. Defendant Erika H. James has served as a director of the Company since August 2018.

13. Defendant Sheryl K. Sandberg has served as a director of the Company since July 2015.

14. Defendant Alexander J. Lurie has served as Chief Executive Officer of the Company since January 2016, interim Chief Financial Officer since March 5, 2021, and a director since December 2009.

15. Defendant Dana L. Evan has served as a director of the Company since March 2012.

16. Defendant Brad D. Smith has served as a director of the Company since May 2017.

17. Defendant Ryan Finley founded the Company in 1999 and has served as a director of the Company since its inception.

18. Defendant Benjamin C. Spero has served as a director of the Company since April 2009.

19. Defendant Serena J. Williams has served as a director of the Company since May 2017.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

21. Relevant non-party Zendesk is a Delaware corporation, with its principal executive offices located at 989 Market Street, San Francisco, California 94103. Zendesk is a service-first customer relationship management company. Zendesk's common stock trades on the New York Stock Exchange under the ticker symbol "ZEN."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

22. Momentive (formerly SurveyMonkey) is an agile experience management company which provides software solutions that help companies turn stakeholder feedback into action in the United States and internationally. It offers survey software products that enable customers to measure, benchmark, and act on stakeholder feedback.

23. The Company's GetFeedback CX platform enables companies to engage and retain their customers based on the ability to continuously listen and act on digital feedback. GetFeedback Digital provides continuous and in-the-moment customer feedback from a company's website, web apps, and mobile apps. GetFeedback Direct enables survey deployment

to company's customers through email and SMS.  Finally, GetFeedback Complete is an end-to-end customer experience solution that combines GetFeedback Digital and GetFeedback Direct.

24.     The Company also provides: (i) SurveyMonkey Audience, which enables organizations to collect and analyze real-time actionable data from targeted panelists; (ii) Expert solutions, which offers a suite of pre-built market research software modules, such as ad and video creative, product concept, packaging and logo design, brand name, and messaging and claims analysis for customers to test product and marketing concepts; (iii) TechValidate, a marketing content automation solution; (iv) SurveyMonkey Apply, an application management solution; and (v) Wufoo that helps users create web and mobile forms, collect file uploads, and receive online payments.  Momentive serves financial services, internet, technology, healthcare, media and entertainment, consumer goods and retail, transportation and logistics, government agencies, manufacturing, energy, education, professional services, and non-profit organizations.

25.     On October 28, 2021, Momentive and Zendesk issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SAN FRANCISCO & SAN MATEO, Calif--Zendesk (NYSE: ZEN) and Momentive (NASDAQ: MNTV) have entered into a definitive agreement under which Zendesk will acquire Momentive, including its iconic SurveyMonkey platform.  The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.
>
> Zendesk expects the combination to be growth accretive in its first full operating year and accelerate Zendesk's revenue plan to $3.5 billion in 2024, one year ahead of its previous target.  The companies' respective sizable customer bases and complementary capabilities are expected to provide significant opportunity for joint product adoption and increasing Momentive's enterprise traction.  Zendesk will reinvest savings from scale efficiencies into compelling growth opportunities to support the combination.  Upon the close of the transaction, Momentive CEO Zander Lurie will continue to lead Momentive's strong management team.

"The SurveyMonkey brand is iconic and we've admired their business from afar since the inception of Zendesk. They truly democratized an industry—almost everyone in the world has responded to one of their surveys at some point," said Mikkel Svane, CEO & Founder, Zendesk. "We're very excited to have them join the Zendesk mission along with Momentive's market research and insights products and together create a powerful new Customer Intelligence company. We will deliver a rich, colorful picture of every customer so businesses really understand their customers and can build more authentic relationships."

"We look forward to combining with Zendesk to advance our mission and accelerate our long-term growth strategy," said Zander Lurie, CEO, Momentive. "This is a testament to the strength of our agile products and talented team. Zendesk and Momentive share a culture centered around our people, our communities and the customers we serve. The synergies between our companies are proximate and compelling. We are uniquely positioned to make Customer Intelligence a reality while delivering significant value for our shareholders."

**Acquisition to Create Powerful New Customer Intelligence Company**

In today's digital-first economy, it is imperative to build more meaningful relationships with customers. Meaning comes from a deep understanding of the customer and their experiences. Although businesses often have an endless supply of data, they lack actionable and personalized customer intelligence. Instead, businesses are left with a picture of the customer that is one dimensional, impersonal and incomplete.

Zendesk pioneered the ability to respond to what customers *say* and *do*, making it easier to deliver superior customer service. Momentive is a leader in capturing how customers *think* and *feel*, helping companies make critical decisions quickly and confidently.

With Momentive, Zendesk will create what businesses really need—a customer intelligence company that connects what customers say and do, with how they think and feel. The combination will give businesses the ability to:

- **Listen to your customers**: Collect critical information about customer needs, experiences and expectations
- **Develop a rich picture:** Bring a customer into focus by combining transactional data with market research and insights for the context to truly understand them
- **Act on insights**: Empower teams to take action with the full breadth of data about their customers as well as feedback and market insights to improve customer interactions

**Transaction Terms**

Following a comprehensive review, the boards of directors of Zendesk and Momentive have approved the transaction.

The terms of the transaction provide for Momentive stockholders to receive 0.225 shares of Zendesk stock for each share of Momentive stock, a ratio which represents an implied value of approximately $28 per outstanding share of Momentive stock based on the 15-day volume weighted average price of Zendesk common stock up to and including October 26, 2021.  Upon closing of the transaction, Zendesk stockholders will own approximately 78% of the combined company and Momentive stockholders will own approximately 22% of the combined company. The transaction, which is anticipated to close in the first half of 2022, is subject to approval by Zendesk stockholders and Momentive stockholders, the receipt of required regulatory approvals and other customary closing conditions.  The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

Zendesk has published a presentation to provide an overview of the transaction, available on both Zendesk and Momentive's investor relations websites. Additional details and information about the terms and conditions of the transaction will be available in Current Reports on Form 8-K to be filed by Zendesk and Momentive with the Securities and Exchange Commission.

**Quarterly Financial Results**

In separate press releases issued today, Zendesk announced financial results for the third quarter of 2021 and Momentive announced preliminary results for its third quarter of 2021.  Momentive will issue a press release to share its full third quarter financial results on November 9, 2021.

**Advisors**

Goldman Sachs & Co. LLC is serving as lead financial advisor and Centerview Partners LLC is also serving as financial advisor to Zendesk. Hogan Lovells US LLP is serving as legal counsel to Zendesk.  Allen & Company LLC and J.P. Morgan Securities LLC are serving as equal lead financial advisors and Wilson Sonsini Goodrich & Rosati Professional Corporation is serving as legal counsel to Momentive.

**The Proxy Misleads Momentive Stockholders by Omitting Material Information**

26.     On December 6, 2021, defendants caused to be filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince Momentive's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical

information concerning: (i) the Company's and Zendesk's financial projections; and (ii) the data and inputs underlying the financial analyses performed by the Company's financial advisors, Allen and J.P. Morgan.

*Material Omissions Concerning the Company's and Zendesk's Financial Projections*

27. The Proxy fails to disclose material information regarding the Company's and Zendesk's financial projections.

28. For example, in connection with their discounted cash flow analyses of Momentive and Zendesk, Allen and J.P. Morgan utilized the standalone unlevered, after-tax free cash flows that Momentive and Zendesk were forecasted to generate during the fiscal years ending December 31, 2021 through December 31, 2031. The Proxy fails, however, to disclose the standalone unlevered, after-tax free cash flows that Momentive was forecasted to generate during the fiscal years ending December 31, 2027 through December 31, 2031, and standalone unlevered, after-tax free cash flows that Zendesk was forecasted to generate during the fiscal years ending December 31, 2026 through December 31, 2031, utilized by Allen and J.P. Morgan in their discounted cash flow analyses of Momentive and Zendesk.

29. The Proxy also fails to disclose the line items underlying each of the Company's and Zendesk's projected Non-GAAP Operating Income and Unlevered Free Cash Flow.

30. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Zendesk Unaudited Financial Projections" and "Momentive Unaudited Financial Projections."

*Material Omissions Concerning Allen's and J.P. Morgan's Financial Analyses*

31. The Proxy also fails to disclose material information regarding Allen's and J.P. Morgan's financial analyses.

32. The Proxy describes Allen's and J.P. Morgan's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Allen's and J.P. Morgan's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Momentive's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Allen's and J.P. Morgan's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

33. With respect to Allen's *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual financial multiples and metrics for each of the comparable companies and transactions observed by Allen in the analyses, respectively.

34. With respect to Allen's *Discounted Cash Flow Analyses*, the Proxy fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Momentive was forecasted to generate during the fiscal years ending December 31, 2027 through December 31, 2031; (ii) the standalone unlevered, after-tax free cash flows that Zendesk was forecasted to generate during the fiscal years ending December 31, 2026 through December 31, 2031; (iii) the terminal values; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 8.0% to 9.25% for Momentive and 7.25% to 8.5% for Zendesk.

35. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Momentive, the Proxy fails to disclose: (i) the unlevered free cash flows that Momentive is expected to generate during the remainder of fiscal year 2027 through fiscal year 2031; (ii) the terminal values for Momentive; and (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%.

36. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of Zendesk, the Proxy fails to disclose: (i) the unlevered free cash flows that Zendesk is expected to generate during the remainder of fiscal year 2026 through fiscal year 2031; (ii) the terminal values for Zendesk; and (iii) the individual inputs and assumptions underlying the discount rates ranging from 8.25% to 9.25%.

37. Without such undisclosed information, Momentive stockholders cannot evaluate for themselves whether the financial analyses performed by Allen and J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Allen's and J.P. Morgan's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

38. The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Momentive Unaudited Financial Projections," "Zendesk Unaudited Financial Projections" and "Opinions of Momentive's Financial Advisors."

39. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

40. Plaintiff repeats all previous allegations as if set forth in full.

41.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and Zendesk's financial projections and the financial analyses performed by Allen and J.P. Morgan. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

43.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     The Individual Defendants acted as controlling persons of Momentive within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Momentive, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Momentive's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Momentive, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate an Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 14, 2021

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*

**LONG LAW, LLC**

By  */s/ Brian D. Long*

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*